# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### OCTOBER 1999 SESSION



**FILED**

**December 20, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| Appellee, | ) **C.C.A. NO. W1998-00312-CCA-R3-CD** |
| | ) |
| VS. | ) **MADISON COUNTY** |
| | ) |
| **JERMURIEL CAMACHO GILLISPIE,** | ) **HON. JOHN FRANKLIN** |
| | ) **MURCHISON, JUDGE** |
| Appellant. | ) |
| | ) (Felony Murder, Second-Degree |
| | Murder, Especially Aggravated |
| | Robbery) |

FOR THE APPELLANT:           FOR THE APPELLEE:

**GEORGE MORTON GOOGE**
District Public Defender

**VANESSA D. KING**
Asst. District Public Defender
227 West Baltimore St.
Jackson, TN 38301

**C. MICHAEL ROBBINS**
46 North Third St., Suite 719
Memphis, TN 38103
     (On Appeal)

**DANIEL J. TAYLOR**
Asst. District Public Defender
     (At Trial)

**PAUL G. SUMMERS**
Attorney General & Reporter

**PETER M. COUGHLAN**
Asst. Attorney General
Cordell Hull Bldg., 2nd Fl.
425 Fifth Ave., North
Nashville, TN 37243-0493

**JERRY WOODALL**
District Attorney General

**DON ALLEN**
Asst. District Attorney General
P.O. Box 2825
Jackson, TN 38302

OPINION FILED:_____

**AFFIRMED AND REMANDED**

**JOHN H. PEAY,**
Judge

# O P I N I O N

The defendant was convicted by a jury of second-degree murder, first-degree felony murder, and especially aggravated robbery. The defendant received an effective sentence of life imprisonment. The trial court overruled the defendant's subsequent motion for a new trial. The defendant now appeals and contends that his convictions for both second-degree murder and first-degree felony murder violate the principles of double jeopardy and that the evidence is insufficient to support his conviction for especially aggravated robbery. We find the defendant's issues to be without merit. However, we remand this cause to the trial court to merge the second-degree murder conviction with the felony murder conviction.

The evidence at trial established that on the morning of Friday, February 23, 1996, the victim, driving his burgundy Cadillac, left home to go to work. On the way to work, the victim picked up the defendant, a co-worker, and gave him a ride to work. Joey Carr, the defendant's stepbrother, testified that he was at home later that afternoon when the victim brought the defendant home. Mr. Carr testified that the defendant went into his stepfather's bedroom, retrieved something, and then left with the victim in the victim's Cadillac. Testimony presented at trial revealed that the defendant's stepfather, Joey Ingram, kept two guns stored in that bedroom. Approximately one hour later, the defendant returned to the house, alone, driving the victim's Cadillac. The defendant again went into his stepfather's bedroom. The defendant and Mr. Carr then left the house in the victim's Cadillac. According to Mr. Carr, later that evening, after Mr. Carr questioned the defendant several times with regard to the victim, the defendant confessed to the victim's murder. The defendant told Mr. Carr that he had shot and killed the victim and that the victim's body was located in a ditch beside an old railroad near their house. The defendant told Mr. Carr that he had covered the victim's body with limbs and leaves. After the defendant's confession, the defendant and Mr. Carr went, in the victim's Cadillac, to the mall, a basketball game, and then to a local McDonald's restaurant. The defendant's presence at the basketball game was confirmed at trial by the defendant's aunt. The evidence at trial established that that evening the defendant did not spend the night at his typical place of residence or at Mr. Carr's residence.

The victim was reported missing on Saturday, February 24, 1996, after his family was unable to ascertain his whereabouts via the victim's pager or cellular phone. The evidence established that it was very unusual for the victim not to inform a family member about any plans he had to stay out. The evidence further established that the victim never allowed anyone to drive his Cadillac unless the car needed repair and then only his grandfather was allowed to drive it. The victim's mother, Gwendolyn Jackson, testified that the victim never mentioned a girlfriend during the time period near his death.

Timothy Gillispie, the defendant's brother, testified that on Saturday, February 24, 1996, the defendant arrived at Mr. Gillispie's residence at approximately 9:30 a.m. The defendant was driving the victim's Cadillac. According to Mr. Gillispie, the victim was not with the defendant. The defendant parked the victim's Cadillac in front of Mr. Gillispie's residence where it remained for the rest of that afternoon. The evidence established that Mr. Gillispie drove the defendant to Mr. Carr's residence sometime between 10:00 a.m. and 11:00 a.m. and all three young men spent the rest of the afternoon together. Both Mr. Carr and Mr. Gillispie testified that they did not see the victim at all that day.

On Sunday, February 25, 1996, Officer Joe House discovered the defendant in possession of the victim's Cadillac. The defendant told Officer House that he had dropped the victim off at the victim's girlfriend's house. The defendant further told Officer House that the victim had asked the defendant to take his Cadillac because he did not want it to be parked in front of the girlfriend's house and because the victim did not want the car to be broken into. The defendant claimed that the victim was supposed to call when he was ready for the defendant to return his Cadillac. The defendant was never specific about the time he left the victim, the apartment the victim went into, or the woman the victim went to visit. The police subsequently turned the Cadillac over to the victim's mother. Officer House testified that the Cadillac showed no apparent signs of a crime.

On the evening of Sunday, February 25, 1996, Mr. Carr's stepmother questioned him regarding the victim's whereabouts. After Mr. Carr told her about the

3

defendant's confession, the police were notified. Mr. Carr subsequently told the police of the location of the victim's body according to the defendant. Based upon this information, the police began a search of a nearby railroad bed. The victim's body was found at approximately 12:30 a.m. on Monday, February 26, 1996, covered with brush and leaves. According to Dr. O'Brien Clarey Smith, the victim died as a result of multiple injuries. These injuries included four gunshot wounds, five incised wounds, including three incised wounds inflicted after the victim was dead, and five blunt traumas to the victim's head. Dr. Smith was unable to conclude the exact order of the wounds but was able to conclude that the injuries were inflicted in a very short period of time. Dr. Smith testified that the victim had been dead for at least forty-eight hours and up to seventy-two hours before his body was discovered.

After interviewing Mr. Carr, the police took possession of a 12 gauge shotgun and a ".38 Special" revolver located in Mr. Carr's place of residence. These guns belonged to Joey Ingram, Mr. Carr's father and the defendant's stepfather, and were kept in Mr. Ingram's bedroom. Subsequent testing by the TBI Crime Laboratory revealed that this .38 revolver was the gun that fired at least two of the bullets used in the victim's murder.

In a later interview with the police, the defendant claimed that at approximately 10:00 a.m. on Saturday, February 24, 1996, he and the victim went to the mall and purchased a compact disc. The defendant stated that the victim then drove to his girlfriend's house and left the Cadillac in the defendant's care. The defendant said he did not know the identity of the victim's girlfriend and was very vague about her address. The defendant "guessed" that the victim did not want his car seen at the girlfriend's residence. The defendant denied that he was at a basketball game on the evening of Friday, February 23, 1996.

The defendant first contends that his convictions of second-degree murder and first-degree felony murder violate the principles of double jeopardy. Specifically, the defendant argues that in the case at bar the offenses of felony murder and second-degree murder are one and the same for the purposes of double jeopardy in that they are

4

both supported by the same evidence, only one act of homicide is at issue, and the legislative purpose involved in the offenses is the same. The defendant states further that, although merger has been found an acceptable remedy in other similar cases, in the case at bar, merger is inappropriate. The defendant contends that since second-degree murder is a lesser grade offense of homicide than first-degree felony murder, it is not a lesser included offense. In addition, the jury considered first a count of premeditated murder and found the defendant not guilty but found the defendant guilty of second-degree murder instead. However, the jury reconsidered the offense of first-degree murder when it went on to find the defendant guilty of first-degree felony murder. See T.C.A. §39-13-202(a)(2). The defendant claims this reconsideration twice put him in jeopardy of conviction of murder in the first-degree. The defendant claims that the second-degree murder conviction and the first-degree felony murder conviction cannot be merged "without tripling the jeopardy to which defendant has been subjected."

Initially, we agree with the defendant that his convictions for both second-degree murder and first-degree felony murder for only one act of homicide subjected him to double jeopardy. See State v. Zirkle, 910 S.W.2d 874, 889 (Tenn. Crim. App. 1995). In order to satisfy double jeopardy concerns, the trial court should have merged the lesser offense of second-degree murder into the greater offense of felony murder. See State v. Addison, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997); State v. Banes, 874 S.W.2d 73, 81 (Tenn. Crim. App. 1993); see also Zirkle, 910 S.W.2d at 889. However, contrary to the defendant's assertions, the order in which the jury considered the charges in the case at bar is of little consequence in the context of merger. It is logical to conclude that a jury could find a defendant not guilty of premeditated first-degree murder but instead, find him guilty of a "knowing" murder, and then also find that the defendant committed the same murder in the perpetration of a robbery. See T.C.A. §§ 39-13-210(a)(1); -202(a)(2). This Court has recently affirmed the conviction of another defendant under these exact circumstances. See State v. Elisa Cochran, No. 03C01-9708-CR-00353, McMinn County (Tenn. Crim. App. filed November 3, 1998, at Knoxville)(defendant indicted for premeditated first-degree murder in first count but found guilty of second-degree murder; in second count defendant found guilty of first-degree

5

felony murder). As such, the defendant's contention that merger is inappropriate in the case at bar is without merit. In light of the foregoing, the proper remedy in the case at bar is to remand the cause to the trial court so that it may enter an order merging the defendant's second-degree murder conviction into the greater offense of first-degree felony murder.

The defendant next contends that the evidence is insufficient to support his conviction for especially aggravated robbery. Specifically, the defendant argues that there is no evidence connecting the victim's Cadillac with the victim's murder. According to the defendant, the only evidence that a robbery occurred is that the defendant was found in possession of the victim's Cadillac after the victim's death. Furthermore, the defendant contends that if the evidence is insufficient to support a conviction for especially aggravated robbery, then there is no underlying felony to justify the defendant's felony murder conviction.

A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

6

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

We note that guilt may be predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. See State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). In addition, the jury decides the weight to be given to circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958); State v. Coury, 697 S.W.2d 373, 377 (Tenn. Crim. App. 1985); Pruitt v. State, 460 S.W.2d 385, 391 (Tenn. Crim. App. 1970).

In order to convict a defendant of especially aggravated robbery, the State must prove that the defendant intentionally or knowingly took the property of another person by violence or putting the victim in fear, that the defendant acted with the intent to deprive the owner of the property, that the robbery was accomplished with a deadly weapon, and that the victim suffered serious bodily injury. T.C.A. §§ 39-13-401(a); -403(a); 39-14-103.

Taking the evidence in the light most favorable to the State, the victim drove the defendant home and the defendant retrieved a revolver from his stepfather's bedroom. The evidence established that the defendant did not own a vehicle at that time. The victim and the defendant traveled to a nearby wooded area. The defendant then shot the victim four times, struck the victim five times in the head with some sort of blunt object, stabbed the victim in the chest, and inflicted four other incised wounds upon the victim. The defendant then took the victim's Cadillac, drove home, returned the revolver to its original storage space, and drove the victim's Cadillac to various activities around town. The defendant continued to use the victim's Cadillac until police took the car and

7

returned it to the victim's mother. In light of the foregoing, there appears to be ample evidence from which a jury could believe the defendant wanted the victim's Cadillac, killed the victim, and then appropriated the Cadillac for his own use, thus meeting the statutory elements of especially aggravated robbery and supporting a conviction for first-degree felony murder. See T.C.A. §§ 39-13-401(a); -403(a); -202(a)(2); see also State v. Buggs, 995 S.W.2d 102, 108 (Tenn. 1999) (holding that a jury may reasonably infer from a defendant's actions immediately after a killing that the defendant had the intent to commit the felony prior to, or concurrent with, the killing). This issue is without merit.

Accordingly, we affirm the defendant's convictions for first-degree felony murder, second-degree murder, and especially aggravated robbery. However, to protect against double jeopardy, we remand this cause to the trial court for an order of merger of the lesser offense of second-degree murder into the greater offense of first-degree felony murder.

_____
JOHN H. PEAY, Judge

CONCUR:


_____
NORMA M. OGLE, Judge


_____
ALAN E. GLENN, Judge